**IN THE COURT OF APPEALS OF IOWA**

No. 24-1072
Filed September 4, 2024

**IN THE INTEREST OF N.E.,**
**Minor Child,**

**E.E., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Warren County, Mark F. Schlenker,

Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Barbara Durden Davis, West Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

Magdalena Reese of the Des Moines Juvenile Public Defender, Des

Moines, attorney and guardian ad litem for minor child.

Considered by Schumacher, P.J., and Buller and Sandy, JJ.

**SCHUMACHER, Presiding Judge.**

A mother appeals the termination of her parental rights to her child, N.E., born in 2009.[1]  She contends the State failed to prove the grounds for termination cited by the juvenile court and termination is not in the best interests of the child. Upon our review, we affirm.

**I.      Background Facts and Proceedings**

This family came to the attention of the Iowa Department of Health and Human Services (HHS) in May 2022, when the mother was physically assaulted by her boyfriend in the presence of the child.  The mother evaded initial contact by the HHS providers, and there were concerns the mother was allowing the boyfriend in the home in violation of a no-contact order protecting the mother and the child. In August, the child was adjudicated in need of assistance (CINA) but remained in the mother's custody under HHS supervision.

HHS requested a modification of placement in September due to continued concerns of violations of the no-contact order between the mother and her boyfriend.  The court entered an order transferring custody to HHS and placing the child with her maternal aunt.  The court entered a dispositional order in October, noting in part:

> The [mother's] home had feces, garbage, etc. in the home and mother stated that she wouldn't do her chores for her.  This comment of the mother seemed immature and do not allow a parent to not keep a safe home.  Mom did not care that [her boyfriend] parks his truck in her parking lot as long as he isn't bothering her.   The presence of the truck corroborates the child's statements that her paramour has been in the home, though she denies it.   These admissions by the mother appeared to this Court to corroborate the

---

[1] The father's parental rights are not at issue.

child's remarks to [HHS] workers and to her Guardian ad Litem. The child does not feel safe in her mother's home.

In a May 2023 report, HHS noted the mother reported she was participating in services and claimed to have ended her relationship with her boyfriend. HHS could not confirm the mother's involvement with domestic-violence or mental-health services because the mother had sent no documentation to HHS. The court's CINA review order noted in part: "Mother shall participate in mental health therapy, substance abuse therapy and work with a [domestic-violence] advocate. Mother shall demonstrate that she can provide a safe, stable home for her child."

Meanwhile, the child's father, who resided in Illinois, was "actively trying to communicate with parties regarding the status of [the child] and anything he needs to do and can do" since being notified about the HHS proceeding. The father was current on child support. He completed social history forms for himself and his wife and was in regular contact with the child. HHS conducted a home study of the father's residence pursuant to the Interstate Compact on the Placement of Children, which was approved. The guardian ad litem reported the child wanted to see the father in person.

In July, the child went to the father's home in Illinois for a three-week visit. The maternal aunt had informed HHS she would only care for the child until the child's visit to Illinois, and during that time, she stopped responding to HHS communications. The mother also was not responding to HHS communications. The State moved to modify placement of the child with the father, indicating the father had the necessary documentation to enroll the child in school. The court entered an order placing custody of the child with the father and ordering the father

to "sign the child up for school immediately and that he is able to sign documents for school, medical and any other documents pertaining to his child."

In the ensuing months, the mother did not engage in services and had little contact with the child. She incurred two operating-while-intoxicated charges, one in 2023 and one in 2024. In an April 2024 report, HHS stated the mother had not responded to HHS communications or contacts. The father reported to HHS that the child was "flourishing mentally and emotionally now" and "seems much happier." The State initiated termination-of-parental-rights proceedings later that month.

The termination-of-parental-rights trial took place over two days in May and June.[2] The mother acknowledged she had not had contact with HHS since 2023. She stated her last physical contact with the child was "before she left and went with her father," approximately nineteen months earlier. And since then, she had communicated sparingly with the child by phone. She acknowledged she did not know how the child was doing in Illinois.

Yet the mother requested the child to be returned to her custody "today." The maternal aunt testified, stating she "would have concerns" if the child was returned to the mother's custody at the present time because the child "needs stability" and the relationship between the mother and the child needed time to "mend." The father testified the child was "doing great" with him in the home he shared with his wife and three-year-old son. The child was engaged in therapy

---

[2] At the outset of trial, the mother's attorney informed the court she had no communication with the mother "since this case began." The court indicated it would allow a continuance after the first day of trial if needed to present more evidence.

and maintained contact with her maternal grandparents and aunt. He had plans for the child to come to Iowa over the summer to visit family members. The father stated he is "all for [the child] having a relationship with her mother," even if she "may not ever go back to live with her."

The child, age fourteen, was compelled to testify by the mother, over objection by the child's attorney and the guardian ad litem as requiring her to testify being contrary to her best interests. The child stated "most" of the mother's testimony at the first day of trial "isn't really truthful." She requested that the court allow her to "stay with" the father but "still see" the mother. The child explained the father's home "is more structured, and I just feel it is better for me as a person," and "I just feel that maybe sometimes [the mother] isn't the most responsible with some things regarding me." HHS and the guardian ad litem recommended termination of the mother's parental rights.

The court entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(b), (e), and (f) (2024). The mother appeals.

## II.    Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Upon review, our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    Analysis

The mother challenges the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court. We may affirm if we find clear

and convincing evidence to support any of the statutory provisions. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on Iowa Code section 232.116(1)(f), which requires proof of several elements conceded by the mother and proof the child could not be returned to her custody. *See* Iowa Code § 232.116(f)(4). The mother claims although she "was not perfect at meeting the expectations of the State and Court, [she] was able to identify that she had a desire to work toward reunification, and was willing to participate in services for return of her child."[3]

The mother was provided services for more than two years. She was directed to engage in domestic-violence and mental-health therapy, but at the termination trial she was unable to readily articulate her therapist's name. The mother was unresponsive to service providers in the months leading up to the termination trial, and she had little contact with the child in over a year. Because the mother did not meaningfully participate in recommended services, she never made progress on the main concern presenting at the outset of the case—her susceptibility to domestic violence; lack of protective capabilities; and by extension, the child's exposure to physical abuse. *See In re J.R.-S.*, No. 24-0781, 2024 WL 3688595, at *3 (Iowa Ct. App. Aug. 7, 2024). The child could not have been safely returned to her custody at the time of the hearing.

---

[3] To the extent that the mother requests "an additional six months to allow her to prove herself safe to have her child home with her," we question if such issue has been preserved. But if error was preserved by the court's observation that even if the mother had so requested, additional time would not be in the child's best interests, the mother has not enumerated what specific factors, conditions, or expected behavioral changes will alleviate the need for removal at the end of an extension. *See* Iowa Code § 232.104(2)(b). We cannot do so either. We therefore conclude an extension of time is unwarranted.

The mother also claims termination is not in the child's best interests. When considering whether termination is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). To support her argument, the mother relies on the child's placement with the mother "for the majority of her life," while the father "failed to be involved in the child's life until the last [twelve] months." On this question, the court found:

> The threat of probable harm will justify termination. [The child's] best interests are served by terminating the parental rights of [the mother]. The child deserves to grow up happy, safe, and free of the uncertainty regarding her care by a parent who has not shown she can care for this child. This Court finds that the State has offered or could have offered sufficient services to the mother, had she wanted them, and has made reasonable efforts to provide services to the mother before termination proceedings were instituted.

In looking at the child's need for a permanent home, "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). We find termination is in the child's best interests.

We affirm the termination of the mother's parental rights.[4]

**AFFIRMED.**

---

[4] The mother does not ask us to consider exercising a permissive exception to termination. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (noting three steps of review in termination-of-parental-rights cases). We therefore limit our analysis to the contested steps. *See In re R.M.*, No. 24-0143, 2024 WL 1297678, at *3 (Iowa Ct. App. Mar. 27, 2024); *accord In re J.F.*, No. 19-1647, 2020 WL 110404, at *1 (Iowa Ct. App. Jan. 9, 2020) ("[W]hen, as here, the parent's claims only relate to one step in our analysis, we only address that step.").